UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
JAHMEL BLAKENEY,                              :    10-CV-5690 (ARR)
                                              :
                        Petitioner,           :    NOT FOR ELECTRONIC
                                              :    OR PRINT PUBLICATION
        -against-                             :
                                              :    OPINION &ORDER
UNITED STATE OF AMERICA,                      :
                                              :
                        Respondent.           :
                                              :
----------------------------------------------------------------- X

ROSS, United States District Judge:

The respondent United States of America, acting on behalf of the government of Bermuda, seeks the extradition to Bermuda, an overseas territory of the United Kingdom, of petitioner Jahmel Glen Blakeney ("petitioner" or "Blakeney"), a citizen of the United States and Bermuda. Bermuda has requested extradition pursuant to the Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland. On November 1, 2010, Magistrate Judge Steven Gold determined that there was probable cause to believe that petitioner committed the extraditable offense of attempted murder (two counts) in Bermuda. Pursuant to 18 U.S.C. § 3184, on November 19, 2010, Judge Gold certified petitioner's extraditability and ordered his commitment pending extradition. On December 7, 2010, petitioner, appearing pro se, filed with this court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. In that petition, petitioner challenges Judge Gold's determination that there is probable cause to believe that petitioner committed an extraditable offense in Bermuda. For the reasons that follow, petitioner's petition for a writ of habeas corpus is denied.

1

## BACKGROUND

I. Factual Allegations[1]

At approximately 9:30 p.m. on November 13, 2009, Blakeney and his girlfriend were at the Southside Cinema, a movie theater in St. George, Bermuda. Clarke Aff. ¶ 43. Blakeney is a member of the Parkside gang. Id. ¶ 33. At the movie theater, petitioner saw Shakai Minors, one of the victims, who is a known member of a rival gang, 42nd Crew. Id. ¶¶ 33, 43. In November of 2009, the gangs were in the midst of a violent feud involving multiple shootings resulting in deaths and serious injuries. Id. ¶ 34.

After seeing Minors, Blakeney contacted Sanchey Grant, his co-defendant on the charges in Bermuda. Id. ¶ 46. Records indicate that Blakeney and Grant spoke by telephone six times between 9:35 and the time of the shooting. Id. After calling Grant, Blakeney drove his girlfriend home, where Grant and Blakeney met at approximately 10:00 p.m. Id. ¶¶ 43, 44. During the drive home, Blakeney's girlfriend, Jalicia Crockwell, sent several text messages to Shaleek Daniels, the girlfriend of another Parkside gang member, in which she suggested that Blakeney was going to meet up with his fellow gang members and do something to a 42nd Crew member he saw at the movie theater. Id. ¶ 44. Excerpts from the text messages read as follows:

> Crockwell: "Well um on my way back town . . . pissed n the movie aint even sold out" (omission in original)
> 
> . . .
> 
> Crockwell: "He saw some guy n just ran out . . ."
> 
> Daniels: ". . . he saw somebody in thur and ran out, see these lot cnt go places like dat by themselves . . . who was the guy?" (second omission in original)

---

[1] The court adopts Judge Gold's summary of the factual allegations against petitioner as set forth in his November 1, 2010 Order. In re Blakeney, 10-MJ-635, 2010 U.S. Dist. LEXIS 121593, at *4-*8 (E.D.N.Y. 2010). Judge Gold's summary is reproduced below. That summary is derived from an Affidavit submitted by Cindy Estelle Clarke, a Senior Crown Counsel (Specialist) in the Department of Public Prosecutions in Bermuda ("Clarke Aff."). Government's Memorandum of Law in Opposition to Section 2241 Petition ("Gov. Mem."), Ex. B at 41-102.

2

> Crockwell: "IDK [I don't know] but d guy was with his girl now
> h[e']s . . . speedn back town 2 get them boys"
>
> . . .
>
> Crockwell: ". . . he called some . . . guy . . ."
>
> Daniels: "Keep his ass inlide girl, it aint even worth it, his all the way
> down the country and U lots back town"
>
> Crockwell: "Back town already . . . his rushin back to fck dis shit"
>
> Daniels: "Keep him in Lic girl . . ."
>
> . . .
>
> Daniels: "So who was the guy?"
>
> Crockwell: "Idk girl n his ass is gne get them boys 2 go b[a]ck down
> there[.] his from 42[,] that's all I kno[w]."
>
> . . .

Id. ¶ 44.

Minors and Renee Kuchler, the second victim, left the theater at approximately 11:30 p.m. Id. ¶ 13. While they were seated in Minors' car, "a lone man approached the vehicle, stood immediately outside the driver's door and discharged several shots from a hand gun." Id. Both Minors and Kuchler suffered multiple gunshot wounds but survived. Id. ¶ 42.

The victims and witnesses described the shooter as wearing a baseball hat, scarf, and jacket. Id. ¶¶ 41, 83(k). They observed the shooter run behind a nearby church; shortly thereafter, a black car was seen coming from behind the church. Id.

The police instituted a road block near the area of the shooting, blocking off the only road affording access to or from the crime scene. Id. ¶¶ 16, 47. At approximately 2:00 a.m. on November 14, 2009, a black Kia Sportage approached the road block but failed to heed instructions to stop, instead accelerating away from the police. Id. ¶¶ 47, 48. Police pursued the

3

vehicle, causing it to stop a short distance away. Id. ¶ 48. Blakeney was the driver of the vehicle and Grant was in the passenger seat. Id. ¶ 51. Both men were arrested. Id. ¶ 52.

Suspecting that Blakeney or Grant might have thrown a gun or other incriminating evidence from the window of the car, the police searched the area along the road where Blakeney was driving. Although they did not discover anything at first, at 7:00 a.m., the police recovered a 9mm Beretta pistol near the road where Blakeney had been driving. Id. ¶ 53. A ballistics analysis established that the bullets removed from the victims were fired from the recovered Beretta. Id. ¶¶ 73, 74. In addition, the hands of both Blakeney and Grant tested positive for "component particles consistent with Gun Shot residue." Id. ¶¶ 56, 57. There were also component particles consistent with gunshot residue on Grant's jock strap, on various items seized from Blakeney's car, including a jacket and a baseball cap, and on various areas in the car, including the steering wheel and hand brake.[2] Id. ¶¶ 58-72.

Grant has remained in custody since his arrest, while Blakeney was released on bail. Id. ¶ 20. Blakeney was required to surrender on December 12, 2009, but failed to appear. Id. A police investigation revealed that Blakeney fled Bermuda for the United States on November 30, 2009. Id. Blakeney was arrested in the United States pursuant to a warrant issued on June 7, 2010 and first appeared before Judge Gold on June 10, 2010. During a status conference held on August 25, 2010, Blakeney declined to waive extradition.

II. The Charges Against Petitioner in Bermuda

The government of Bermuda seeks extradition of petitioner to face charges of attempted murder in Bermuda. Petitioner is charged with two counts of attempted murder under § 289(a) of the Criminal Code of Bermuda. Section 289(a) states that "[a]ny person who attempts

---

[2] The jacket and a glove found in the car tested positive for component particles "unique" to gunshot residue. Clarke Aff. ¶ 83(z-aa). In addition, Grant's DNA is on the baseball cap. Clarke Aff. ¶ 61.

4

unlawfully to cause the death of another person is guilty of a felony, and is liable to imprisonment for twenty years." Gov. Mem. Ex. B at 80. Petitioner faces this charge as either a principal or an aider and abettor. Under the law of Bermuda, an accessory to a crime may be charged as a principal. Section 27 of the Criminal Code provides that "every person who does any act . . . for the purpose of enabling or aiding another person to commit the offense; . . . who aids another person in committing the offence; [or] who counsels or procures any other person to commit the offence" may be charged with actually committing it. Id. at 90.

In her affidavit, the prosecutor states that "the Crown must prove that an act was done which was more than merely prepatory to the offence of Murder" and "that there was intent to kill." Clarke Aff. ¶¶ 77, 78. Moreover, "the Crown must prove that the person charged with the offence either did the act or enabled, aided, abetted, counseled, or procured another person to commit the offence." Id. ¶ 79. The prosecutor contends that the evidence establishes probable cause to believe that petitioner committed the offence of attempted murder either because he was the shooter or because he enabled, aided, abetted, counseled or procured the shooter to commit the offence. Id. ¶ 80.

III.   The Extradition Treaty

The applicable extradition treaty is the 1977 Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland ("1977 Treaty"), including the 1986 Supplemental Extradition Treaty between the two governments ("1986 Supp. Treaty" and, together with the 1977 Treaty, the "Treaty").[3]

---

[3] In proceedings before Judge Gold, the applicability of the Treaty was not disputed. In re Blakeney, 2010 U.S. Dist. LEXIS 121593, at *2. Judge Gold, however, questioned the parties regarding a 2003 Extradition Treaty between the United States and the United Kingdom. Id. The parties agreed that Bermuda is not a party to the more recent treaty. Id. In any event, Judge Gold found that "the differences in the two treaties are inapplicable for the most part here and applying either treaty would lead to the same result." Id. The court concurs with Judge Gold's assessment.

5

Gov. Mem. Ex. B at 5-38. The Treaty provides for extradition upon a showing that the requested individual has been charged with or convicted of an extraditable offense and of probable cause to support that charge. 1977 Treaty Arts. III, IX, Gov. Mem. Ex. B at 26-27, 29; 1986 Supp. Treaty Art. 2, Gov. Mem. Ex. B at 14. Paragraph (1) of Article III of the 1977 Treaty states that a schedule of specific offenses annexed to the treaty and certain offenses punishable under the laws of both parties by imprisonment of more than one year or the death penalty are extraditable.[4] Gov. Mem. Ex. B at 26. Attempted murder is listed in the schedule of extraditable offenses. Id. at 32. Paragraph (1) of Article IX of the 1977 Treaty states that "[e]xtradition shall be granted only if the evidence be found sufficient according to the law of the requested Party either to justify the committal for trial of the person sought if the offense of which he is accused had been committed in the territory of the requested Party . . . ." Id. at 29. Under Article 2 of the 1986 Supp. Treaty, probable cause means "there is sufficient evidence to warrant a man of reasonable caution in the belief that: (1) the person arrested or summoned to appear is the person sought; [and] (2) in the case of a person accused of having committed a crime, an offense has been committed by the accused." Id. at 14.

IV. Judge Gold's November 1, 2010 Order

In accordance with 18 U.S.C. § 1384, Judge Gold reviewed the evidence against petitioner to determine whether it supported the charges of attempted murder such that

---

[4] Paragraph 1 of Article III of the 1977 Treaty states, in relevant part:

(1) Extradition shall be granted for an act or omission the facts of which disclose an offense within any of the descriptions listed in the Schedule annexed to this Treaty, which is an integral part of the Treaty, or any other offense, if

  (a) The offense is punishable under the laws of both Parties by imprisonment or other form of detention for more than one year or by death penalty;

  (b) The offense is extraditable under the relevant law, being the law of the United Kingdom or other territory to which this Treaty applies by virtue of sub-paragraph (1)(a) of Article II; and

  (c) The offense constitutes a felony under the law of the United States of America.

6

extradition was warranted under the Treaty. Before Judge Gold, petitioner challenged his extradition on the basis that the government of Bermuda had not presented sufficient evidence for a finding of probable cause. In re Blakeney, 2010 U.S. Dist. LEXIS 121593, at *4. In his November 1 Order, Judge Gold rejected petitioner's contention and held that the "government's proof meets the limited threshold of probable cause and is sufficient to support extradition." Id. at *15. In support of his conclusion, Judge Gold cited the substantial amount of evidence submitted by the government of Bermuda in support of a finding of probable cause:

> First, the Bermudian prosecutor has provided a detailed statement of the evidentiary support for the facts alleged in her affidavit, identifying the witnesses and police officers who would testify in support of the prosecution's case and summarizing the testimony each would provide . . . . Moreover, the witness statements are persuasively corroborated. Ballistics reports indicated that the bullets removed from the victims were fired from the gun recovered on the road where Blakeney's car had recently driven, and that Blakeney and Grant both had 'component particles consistent with gunshot residue' on their hands . . . . In addition, telephone records show several calls between Blakeney and Grant during two hours that elapsed between the time Blakeney saw the victims and when they were shot. The text messages sent and received by Blakeney's girlfriends, quoted in substantial part above . . . provide additional corroborative evidence that is particularly incriminating.

Id. at *15-*16 (citations omitted).

Judge Gold found petitioner's attempts to undermine this evidence unavailing. He noted that petitioner did not submit any evidence in opposition to the government's proof. Id. at *17. Moreover, he found that petitioner's argument that the evidence was unreliable failed to raise any serious doubts regarding its reliability and did not negate the prosecutor's showing of probable cause. Id. Lastly, he rejected petitioner's assertion that, to the extent the evidence was incriminating at all, it only suggested that petitioner was an accessory after the fact. Id. at *18. Judge Gold noted that there was sufficient evidence – such as the records of telephone calls between Blakeney and Grant and the incriminating text messages sent and received by

7

Blakeney's girlfriend– that demonstrated his involvement prior to the shooting. Id.

Accordingly, Judge Gold held "even if there is insufficient evidence to establish that Blakeney was the shooter, there is ample evidence 'to warrant a man of reasonable caution in the belief that' Blakeney, enabled, aided, counseled or procured Grant to shoot the victims." Id. He concluded that "there is sufficient evidence to establish probable cause to believe that Jahmel Glen Blakeney committed attempted murder when he or his co-defendant shot Minors and Kuchler." Id. at *19 (citation omitted).

Based on these findings in his November 1 Order, on November 19, 2010, Judge Gold certified petitioner's extraditability and ordered his commitment pending extradition pursuant to 18 U.S.C. § 3184. Gov. Mem. Ex. D.

V. The Instant Action

On December 17, 2010, petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 with this court. Dkt. No. 1. In that petition, he challenges Judge Gold's certificate of extraditability and order of commitment. He asserts that "[t]here is no probable cause to believe that [he] committed an extraditable offence in Bermuda and Magistrate Judge Gold's decision violates the extradition treaty between the two countries and the U.S. Constitution." Id. Petitioner seeks to be "released from custody immediately." For the reasons that follow, the court finds that (i) Judge Gold had jurisdiction over the extradition proceeding, (ii) attempted murder is an extraditable offense under the Treaty, and (iii) there is sufficient evidence to support Judge Gold's finding of probable cause to believe that petitioner committed attempted murder in Bermuda. Accordingly, the petition for a writ of habeas corpus is denied.

8

## DISCUSSION

I. Legal Standard

"An order certifying a request for extradition cannot be reviewed on direct appeal because [e]xtradition orders do not . . . constitute final decisions of a district court, appealable as of right under 28 U.S.C. § 1291." Germany v. United States, No. 06-CV-01201 (DLI), 2007 U.S. Dist. LEXIS 65676, at *11 (S.D.N.Y. 2007) (citation and internal quotation marks omitted; alteration and ellipsis in original). "However an individual subject to extradition may have his extradition order reviewed by seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Id. (citation omitted). "A habeas court's review of an order of an extradition order is highly circumscribed." Id. (citation omitted). "Habeas corpus . . . is not a means of rehearing what a judge presiding over an extradition hearing has already determined." Id. (citing Ahmad v. Wigen, 910 F.2d 1063, 1066 (2d Cir. 1990)). "Rather, habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offen[s]e charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." Id. (quoting Fernandez v. Phillips, 268 U.S. 311, 312 (1925)) (internal quotation marks omitted; alteration in original).

II. Jurisdiction

Petitioner does not challenge Judge Gold's jurisdiction over his extradition proceeding. Nevertheless, the court notes that Judge Gold had clear jurisdiction over petitioner's extradition proceeding pursuant to 18 U.S.C. § 3184. That statute states, in relevant part:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, . . . any justice or judge of the United States, or any magistrate judge authorized so to do by a Court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the

9

> crimes provided for by such treaty or convention, . . . issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that evidence of criminality may be heard and considered . . . .

The jurisdictional requirements of 18 U.S.C. § 3184 are met in this case. There is an extradition treaty in full force and effect between the United States and the United Kingdom, which governs extradition with Bermuda. The government filed a complaint under oath, and petitioner was arrested within this jurisdiction.

For a magistrate judge to exercise jurisdiction under 18 U.S.C. § 3184, a district judge need not specifically delegate authority to the magistrate to conduct the extradition proceeding. Germany, U.S. Dist. LEXIS 65676, at *14 (citing Austin v. Healey, 5 F.3d 598 (2d Cir. 1993)). In any event, in the Eastern District of New York, magistrate judges are specifically empowered to conduct hearings and consider evidence in extradition proceedings. Id. (citing Local Crim. R. 58.1(b)). Judge Gold therefore had jurisdiction to conduct petitioner's extradition proceeding.

III. Extraditable Offense

Petitioner contends that attempted murder, the offense with which he is charged in Bermuda, is not an extraditable offense under the Treaty. That contention is meritless.

Under United States law, for a charged offense to be extraditable, it must be "an offense that is either listed or defined as such by the applicable treaty" and the alleged conduct underlying the charges must satisfy "dual criminality," i.e. it must be criminal in both jurisdictions. Spatola v. United States, 741 F.Supp. 362, 371 (E.D.N.Y. 1990), aff'd, 925 F.2d 615 (2d Cir. 1991). In assessing "dual criminality," the proper inquiry is: "if the individual had committed the same acts in the United States, would a crime have been committed and would it have been a felony?" Yau-Leung v. Soscia, 649 F.2d 914, 918 (2d Cir. 1981). This court may look to both federal law and the law of the state in which petitioner was apprehended in

10

conducting this inquiry. Id. ("[T]he phrase 'under the law of the United States of America' in an extradition treaty referring to American criminal law must be taken as including both state and federal law absent evidence that it was intended to the contrary.") "[W]hen addressing whether an offense is covered under a treaty, the court is only interested in rough parity – there is no requirement that statutes be identical." Germany, 2007 U.S. Dist. LEXIS 65676, at *16 (citing Collins v. Loisel, 259 U.S. 309, 312 (1922) ("[i]t is enough if the particular act charged is criminal in both jurisdictions.")).

Here, the offense of attempted murder is specifically listed as an extraditable offense in the Treaty. Gov. Mem. Ex. B at 32. With respect to "dual criminality," the alleged conduct that forms the basis of the attempted murder charge in Bermuda is a felony under both United States and New York law. Petitioner is alleged to be either the person who intentionally shot Minors and Kucher or an aider and abettor of that shooting. Under United States law, the conduct of the alleged shooter of Minors and Kuchler is chargeable as attempted murder in the first degree under 18 U.S.C. § 1113, which provides that attempted murder is punishable by not more than twenty years in prison.[5] The conduct of the alleged accessory to the shooting also is chargeable under 18 U.S.C. § 1113, because 18 U.S.C. § 2 provides that whoever "aids, abets, counsels, commands, induces or procures" the commission of a crime is punishable as a principal. Petitioner's alleged conduct is also a felony in New York. Under New York Penal Law §§ 110.00 and 125.25, the conduct of the alleged shooter would constitute attempted murder in the second degree.[6] That crime is punishable by a term of fifteen years to life in prison under New

---

[5] 18 U.S.C. § 1111(a) defines murder as the "unlawful killing of a human being with malice aforethought." Under that provision, all "willful, deliberate, malicious, and premeditated killing" is murder in the first degree. Id. 18 U.S.C. § 1113 provides that "whoever, within the special maritime and territorial jurisdiction of the United States, attempts to commit murder . . ., shall, for an attempt to commit murder be imprisoned not more than twenty years . . . ."

[6] New York Penal Law § 125.25 states, in relevant part: "A person is guilty of murder in the second degree when:
1. With intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

11

York Penal Law § 70.00. The alleged accessory to the shooting would be liable for the actions of the alleged shooter under New York Penal Law § 20.00.[7] Thus, the alleged conduct of both the shooter and the accessory is criminal under United States and New York law.

As noted above, § 289(a) of the Criminal Code of Bermuda criminalizes attempted murder and § 27 of that Code provides that an accessory may be charged as a principal. Thus, regardless whether petitioner is alleged to be the shooter or the accessory to the shooting, his alleged conduct is criminal in Bermuda.

Accordingly, because the Treaty specifically lists attempted murder as an extraditable offense, and because petitioner's alleged conduct is criminal in both the United States and Bermuda, petitioner may be extradited to Bermuda to face charges of attempted murder, if there is probable cause to believe he committed that offense.

IV. <u>Probable Cause</u>

Petitioner challenges Judge Gold's finding that there was probable cause to believe that petitioner committed attempted murder in Bermuda. Again, petitioner's argument lacks merit.

The Treaty provides that probable cause means "there is sufficient evidence to warrant a man of reasonable caution in the belief that: . . . (2) in the case of a person accused of having committed a crime, an offense has been committed by the accused . . . ."[8] Gov. Mem. Ex. B at 14. The Treaty's probable cause standard is in accordance with the probable cause standard under United States law for certifying an individual for extradition. Spatola, 741 F.Supp. at 373 ("To establish the level of probable cause necessary to certify one for extradition, evidence must

---

New York Penal Law § 110.00 states: "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."

[7] New York Penal Law § 20.00 provides: "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct."

[8] Petitioner concedes that he is the individual for whom extradition is sought. Gov. Mem. Ex. D at 2.

be produced that is 'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'") (citations and internal quotation marks omitted). "[T]he primary source of evidence for the probable cause determination is the extradition request, and any evidence in it is deemed truthful for the purposes of this determination." Id. (citations and internal quotation marks omitted). "A magistrate's finding that there is probable cause will not be overturned so long as there is *any* evidence warranting the finding that there was reasonable ground to believe the accused guilty." Id. (citing Collins, 259 U.S. at 315) (emphasis in original).

Here, there is ample evidence supporting Judge Gold's determination that there was probable cause to believe that petitioner was either the alleged shooter or an accessory to the alleged shooting. In his opinion, Judge Gold carefully evaluated the evidence submitted by the government of Bermuda in support of its request for extradition. He noted that the government of Bermuda provided detailed evidentiary support for the charges against petitioner, including identifying the witnesses and police officers who would testify in support of the case. Judge Gold found that the witness statements were corroborated by ballistics reports, telephone records, and the text messages sent and received by petitioner's girlfriend. Judge Gold noted that petitioner did not submit any evidence rebutting the evidence submitted by the government of Bermuda, and he rejected petitioner's argument challenging the reliability of that evidence. Moreover, he found that there was substantial evidence supporting the allegation that petitioner was involved in the crime prior to the shooting, including the phone records and text messages; thus, he also rejected petitioner's argument that the evidence could only demonstrate that petitioner was an accessory after the fact. After independently reviewing the evidence submitted by the government of Bermuda, the court agrees with Judge Gold's determinations. It therefore

affirms his finding of probable cause to believe that "Jahmel Glen Blakeney committed attempted murder when he or his co-defendant shot Minors and Kuchler." In re Blakeney, 2010 U.S. Dist. LEXIS 121593, at *19 (citation omitted).

## CONCLUSION

For the foregoing reasons, the court finds that (i) Judge Gold had jurisdiction over the extradition proceeding, (ii) attempted murder is an extraditable offense under the Treaty, and (iii) there is sufficient evidence to support Judge Gold's finding of probable cause to believe that petitioner committed attempted murder. Accordingly, the court holds that Judge Gold correctly certified that petitioner was extraditable for the offense of attempted murder and Judge Gold properly ordered petitioner committed pending his extradition. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is denied.

SO ORDERED.

/Signed by Judge Ross/

Allyne R. Ross
United States District Judge

Dated: January 31, 2011
Brooklyn, New York

14

SERVICE LIST:

**Petitioner:**
Jahmel Blakeney
78247-053
MDC-Brooklyn
P.O. Box 329002
Brooklyn, NY 11232